*Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ruben Castillo | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 8940 | **DATE** | 7/14/2004 |
| **CASE TITLE** | International Star Registry of Illinois, Ltd. vs. SLJ Group, Inc. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Plaintiff's motion for order to show cause and find defendant in contempt of court [8-1] is granted. Defendant is ordered to pay Plaintiff reasonable attorney's fees generated in connection with Plaintiff's motion. Plaintiff should file a motion and accompanying affidavits quantifying its damages stemming from defendant's violation of the Consent Injunction.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | number of notices | |
| | No notices required. | | | |
| | Notices mailed by judge's staff. | | JUL 16 2004 date docketed | |
| | Notified counsel by telephone. | | | |
| ✓ | Docketing to mail notices. | | | |
| | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | docketing deputy initials | 19 |
| | Copy to judge/magistrate judge. | 2004 JUL 15 PM 12:34 | date mailed notice | |
| RO | courtroom deputy's initials | Date/time received in central Clerk's Office | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

INTERNATIONAL STAR REGISTRY OF )
ILLINOIS, LTD., an Illinois corporation, )
)
      Plaintiff, )
)
v. ) No. 03 C 8940
)
) Judge Ruben Castillo
)
SLJ GROUP, INC., formerly d/b/a )
INTERNATIONAL STAR COUNCIL, )
)
      Defendant. )

## MEMORANDUM OPINION AND ORDER

Plaintiff International Star Registry ("ISR") moves for an Order to Show Cause why Defendant SLJ Group, Inc. ("SLJ") should not be held in contempt for violation of the Consent Judgment and Injunction ("Consent Injunction"). The Consent Injunction enjoins SLJ from further use of ISR's federally registered trademarks STAR REGISTRY and INTERNATIONAL STAR REGISTRY, and from further use of Defendant's mark, term, or designation INTERNATIONAL STAR COUNCIL. SLJ argues that any violation of the Consent Injunction stemmed from advertiser errors, which SLJ corrected in a timely manner. SLJ further argues that the Consent Injunction does not prohibit SLJ's continued use of "paid per inclusion" advertising or "banner ads." For the reasons provided below, we grant ISR's motion and find SLJ in contempt of court.[1] (R. 8-1.)

---

[1] Even though ISR only seeks a rule to show cause, the brief and associated affidavits contain sufficient information for this Court to determine whether SLJ should be held in contempt without an evidentiary hearing.

1

## RELEVANT FACTS

ISR's initial complaint asserted that SLJ had infringed its federally registered trademarks through SLJ's use of these marks to promote its own competitive star registration company. After months of negotiations, the parties entered into a Settlement Agreement on April 14, 2004, which led to a Consent Injunction that was entered on April 19.[2] (R. 8-2, Pl.'s Mem. at 2.) The Consent Injunction enjoined SLJ from further use of ISR's federally registered trademarks STAR REGISTRY and INTERNATIONAL STAR REGISTRY, and from further use of Defendant's mark, term, or designation INTERNATIONAL STAR COUNCIL. (*Id.*, Ex. A, Consent Inj. at 3.) The relevant portion of the Consent Injunction reads as follows:

> The Defendant, SLJ Group, Inc., and any of its agents, servants, employees, attorneys and all persons in active concert or participation with them who receive notice, consistent with the provisions of the Settlement Agreement between the parties, incorporated by reference, are hereby enjoined and restrained from:
>
> 11(a) Using the service marks, trademarks, and trade names INTERNATIONAL STAR COUNCIL, INTERNATIONAL STAR REGISTRY, AND STAR REGISTRY, and any colorable imitations thereof, or any words, designs or representations confusingly similar thereto *in connection with the advertising, offering for sale and/or sale of any services or products, including but not limited to, any use of such marks upon the Internet;*
>
> 11(b) Otherwise from using the service marks, trademarks, and trade names INTERNATIONAL STAR COUNCIL, INTERNATIONAL STAR REGISTRY, AND STAR REGISTRY, or from adopting or using confusingly similar marks, terms or designations thereto, *including but not limited to any use of such marks, terms or designations as meta tags or otherwise upon the Internet, or in directing Internet traffic intended for ISR's marks to SLJ or its representatives.*

(*Id.* ¶11) (emphasis added).

---

[2] All of the facts cited in this opinion occurred in 2004.

Before the Consent Injunction was entered, SLJ changed its name on its website from INTERNATIONAL STAR COUNCIL to UNIVERSAL STAR COUNCIL and destroyed all printed materials in its possession bearing its former name. (R. 12, Def.'s Resp. at 3.) SLJ also notified the 800 independent contractors authorized to advertise on its behalf to discontinue further use of the mark and the name INTERNATIONAL STAR COUNCIL. (*Id.* at 4.) SLJ claims that it discontinued use of the mark STAR REGISTRY before entering the Settlement Agreement and that it had never used ISR's mark and business name INTERNATIONAL STAR REGISTRY. (R. 12, Def.'s Resp. at 3.)

On April 23, ISR sent SLJ the first of many monitoring letters citing the use of ISR's enjoined marks. (R. 15, Pl.'s Reply, Ex. H, 4/23/04 Letter.) In that letter, ISR notified SLJ that one of ISR's employees had received an email from "International Star Council" that led to SLJ's website, www.yourstar.com. (*Id.*) Three days later, ISR again contacted SLJ to notify it of further violations of the Consent Injunction. (R. 8-2, Pl.'s Mem., Ex. B, 4/26/04 Letter.) ISR stated in this letter that SLJ's use of the marks INTERNATIONAL STAR REGISTRY and STAR REGISTRY in connection with advertisements accessible through Internet search engines such as Overture and Google violated the Consent Injunction.[3] (*Id.*) This letter documented that a search for the term "star registry" on Overture produced an advertisement for www.yourstar.com that included the prohibited heading INTERNATIONAL STAR REGISTRY. (*Id.*) In

---

[3] Overture and Google are Internet search engines that allow consumers wishing to find information on the Internet to search for that information using key words. Search engines "read source codes, which are not immediately visible to an Internet user, in response to such queries." *Eli Lily & Co. v. Natural Answers, Inc.*, 233 F.3d 456, 460 (7th Cir. 2000). When the consumer enters search terms, "the search engine processes [them] through a self-created index of web sites to generate a (sometimes long) list related to the entered keyword[s]." *Brookfield Communications, Inc. v. W. Coast Entm't. Corp.*, 174 F.3d 1036, 1045 (9th Cir. 1999).

3

addition, the letter documented that a search for the term "international star registry" on Google returned an SLJ-sponsored advertisement under the "Sponsored Links" section on the web page's right-hand column showing the following advertisement:

> Star Registry
> Name a Star. For the person who has
> everything. What a gift! – aff.
> www.starregistry.com.

(*Id.*)

On April 27, SLJ indicated that it had "informed all of its media outlets about the change in name to Universal Star Council and [was] working to make sure that all changes are carried out." (*Id.*, Ex. C, 4/27/04 Letter.) SLJ admitted that some of its advertisers had continued to use its old advertising erroneously. (*Id.*) SLJ indicated that the Overture error highlighted in ISR's April 26 letter may take time to correct even though SLJ had been "working diligently" to make the change. (*Id.*) With respect to the Google advertisement referenced in ISR's April 26 letter, SLJ simply asserted that "paid per inclusion" advertising does not violate the Consent Injunction. (*Id.*)

On April 28, 2004, ISR communicated to SLJ in writing its stance that "paid per inclusion" advertising violated the Consent Injunction and notified SLJ of additional violations. (*Id.*, Ex. D, 4/28/04 Letter.) Specifically, ISR demonstrated that a Google search for the term "star registry" on April 27, 2004 returned two SLJ advertisements under the "Sponsored Links" area of the Google web page. (*Id.*) The first SLJ-sponsored advertisement read:

> Star Registry Service
> Name a real star forever for only
> $39.95! 30 day money back. Aff.
> www.yourstar.com.

4

(*Id.*) The second SLJ-sponsored advertisement was the same violation cited in ISR's April 26 letter. (R. 8-2, Pl.'s Mem., Ex. D, 4/28/04 Letter.) While this advertisement appeared to be a link to ISR's website, any consumer who clicked on this link was taken directly to SLJ's website at www.yourstar.com. (*Id.* at 7.)

On May 7, ISR sent another letter to SLJ inquiring as to SLJ's efforts to remedy the cited violations. (*Id.*, Ex. E, 5/7/04 Letter.) SLJ responded on May 10 with a letter confirming its oral agreement to remove the STAR REGISTRY reference from the first SLJ-sponsored advertisement referenced in ISR's April 28, 2004 letter. (*Id.*, Ex. F, 5/10/04 Letter.) SLJ stated that the "reference will be removed shortly if it has not already been removed." (*Id.*) In addition, SLJ stated its position that "banner ads" do not violate the Consent Injunction. (*Id.*) On May 11, 2004, ISR sent its final letter to SLJ before filing this motion. (R. 8-2, Pl.'s Mem., Ex. G, 5/11/04 letter.)

In its Reply Brief, ISR cites numerous violations that occurred after the date of its initial brief on this issue. For example, while SLJ removed the second SLJ-sponsored advertisement cited in ISR's April 26 and April 28, 2004 letters after the filing of the present contempt motion, a modified advertisement using the prohibited heading STAR REGISTRY was posted on the Internet in time for Father's Day. (R. 16, Supp. Mosele Decl. ¶ 8.) ISR asserts that SLJ remains dilatory in remedying enjoined conduct and continues to intentionally violate the Consent Injunction to this day. (R. 15, Pl.'s Reply at 1.)

## LEGAL STANDARDS

Civil contempt proceedings arise under 18 U.S.C. § 401(3), which states in pertinent part: "[a] court of the United States shall have power to punish by fine or imprisonment, or both, at its

5

discretion, such contempt of its authority, and none other, as . . . [d]isobedience or resistance to its lawful writ, process, order, rule, decree, or command." "The purpose of a civil contempt proceeding is either enforcement of a prior court order or compensation for losses suffered as a result of non-compliance with that order." *TMT N. Am., Inc., v. Magic Touch GmbH*, 57 F. Supp. 2d 586, 589 (N.D. Ill. 1999) (quoting *Miller v. LeSea Broad., Inc.*, 927 F. Supp. 1148, 1149-50 (E.D. Wis. 1996)). The complaining party must prove by clear and convincing evidence that the opposing party violated a court order. *Stotler & Co. v. Able*, 870 F.2d 1158, 1163 (7th Cir. 1989). To hold a party in contempt, this Court "must be able to point to a decree from the court which sets forth in specific detail an unequivocal command which the party in contempt violated." *Ferrell v. Pierce*, 785 F.2d 1372, 1378 (7th Cir. 1986). We need not find that the violation was "willful" to find civil contempt. *Commodity Futures Trading Comm'n v. Premex, Inc.*, 655 F.2d 779, 784 n.9 (7th Cir. 1981). Rather, we may find a party in contempt if it has not been "reasonably diligent and energetic in attempting to accomplish what was ordered." *Am. Fletcher Mortgage Co. v. Bass*, 688 F.2d 513, 517 (7th Cir. 1982) (quoting *Powell v. Ward*, 643 F.2d 924, 931 (2d Cir. 1981)).

## ANALYSIS

ISR asserts that SLJ should be held in contempt because it continues to violate the Consent Injunction by using the enjoined marks in Internet advertising.[4] We find that ISR has

---

[4] ISR also alleges that SLJ's use of "paid per inclusion" and banner advertising violates the Consent Injunction. (R. 15, Pl.'s Reply at 6-10.) The words "paid per inclusion" advertising and "banner ads" do not appear in the Consent Injunction. Without an "unequivocal command" in the Consent Injunction barring SLJ from conducting such activity we cannot find SLJ in contempt for engaging in this conduct. *Ferrell*, 785 F.2d at 1378. We note, however, that the Ninth Circuit has held that unlabeled banner advertisements can create initial interest confusion and misappropriation of a trademark's goodwill. *Playboy Enters., Inc. v. Netscape Communications Corp.*, 354 F.3d 1020, 1025 (9th Cir. 2004). If SLJ continues to use these forms of advertising, ISR should bring a second motion for rule to show cause explaining in more specific detail why this conduct violates the Consent Injunction. Our present holding is not based on these cited violations. (*See* R. 16, Supp. Mosele Decl., Exs. 23-26.)

established with clear and convincing evidence that SLJ did and continues to violate the Consent Injunction. ISR has sent repeated notices of violations to SLJ, and SLJ continues to use the enjoined trademarks to promote its Internet business. We find that SLJ has not been "reasonably diligent and energetic" in attempting to fulfill its obligations under the Consent Injunction. On the contrary, the evidence demonstrates that SLJ's on-going failure to fulfill its obligations under the Consent Injunction has been willful.

I.      **Inadvertent Violations**

On June 23, 2004, two months after the entry of the Consent Injunction, SLJ continued to use the enjoined term INTERNATIONAL STAR COUNCIL in its Internet advertising. For example, a consumer who searched for the terms "international star council" on Yahoo would discover a link to www.internationalstarcouncil.com which would lead the consumer to SLJ's website. (R. 16, Supp. Mosele Decl. ¶ 4.) SLJ argues that this link appears in connection with its new website because Yahoo technology maintains SLJ's old name in its archives. (R. 17, Supp. Amoroso Decl. ¶ 3.) Even so, SLJ admits that www.internationalstarcouncil.com immediately directs a user to SLJ's new website, www.yourstar.com. (*Id.*) Additionally, on June 23, 2004, a consumer who searched for the terms "international star council" on Google would find two violations of the Consent Injunction. First, they would see a live link to www.internationalstarcouncil.com that would lead them directly to SLJ's website. Second, they would find a "Sponsored Link" to SLJ's website under the heading "Star Registry." (*Id.* at ¶ 4.)

Although immediate compliance with the agreement was not expected, two months was more than enough time for SLJ to establish a monitoring system to discover and eliminate so-called inadvertent errors.[5] SLJ failed to conduct simple searches consistently, which required

---

[5] This Court would not hold SLJ in contempt if the problem was only a matter of a few references to the enjoined marks on obscure websites. (*See* R. 16, Supp. Mosele Decl., Exs. 16-20.) We are, however, concerned about SLJ's repeated failures to monitor and modify

7

minimal effort, using the mark INTERNATIONAL STAR COUNCIL or other enjoined marks. ISR's continuous discovery of readily observable violations demonstrates SLJ's lack of reasonable diligence in its efforts to comply with the Consent Injunction.

SLJ's argument that the sheer size of its advertiser network makes it impossible to check every "rogue" advertiser does not excuse its lack of diligence. SLJ could have consulted counsel to request and review advertisements before posting to ensure their compliance with the Consent Injunction. SLJ also could have hired a computer consultant to monitor its extensive network of advertisers. *See, e.g., Nettis Envtl., Ltd. v. IWI, Inc.*, 46 F. Supp. 2d 722, 726 (N.D. Ohio 1999). A diligent party could have taken these and any other reasonable steps to ensure full compliance from its advertisers. SLJ's attempt to pass its monitoring burden on to its advertisers or ISR demonstrates a clear lack of diligence on SLJ's part in complying with the Consent Injunction.

## II. Willful Violations

Although this Court need not find SLJ's violations "willful" to find contempt, we find that there is clear and convincing evidence that SLJ willfully violated the Consent Injunction in three ways. First, the Consent Injunction prohibits SLJ from directing Internet traffic intended for ISR's marks to SLJ. (R. 8-2, Pl.'s Mem., Ex. A, Consent Inj. at 3.) Nevertheless, on May 17, 2004, a consumer typing the domain name www.internationalstarcouncil.com into their internet browser would arrive at SLJ's new website, www.yourstar.com.[6] (R. 9, Mosele Decl., ¶ 9.) By linking its website to the enjoined terms, SLJ ensured that consumers looking for products linked to the name International Star Council would be guided directly to its website.

---

references to enjoined marks that are generated through straight-forward searches on major search engines.

[6] In Rocky Mosele's Declaration in support of ISR's motion, he asserts that this violation occurred on April 17, 2004. However, the corresponding exhibit shows the violation date as of May 17, 2004. We assume that the correct date is that of the printed exhibit, May 17, 2004.

8

Thus, SLJ violated the Consent Injunction by using the enjoined mark INTERNATIONAL STAR COUNCIL in connection with its Internet advertising. (R. 8-2, Pl.'s Mem., Ex. A at 3.)

Second, even though ISR notified SLJ on April 28 of the STAR REGISTRY SERVICE reference in connection with SLJ's website www.yourstar.com, the advertisement remained active until one day after Mother's Day.[7] (R. 16, Supp. Mosele Decl. ¶ 7.) Because the corrected advertisement appeared approximately thirty-six hours after the holiday, SLJ received goodwill from ISR's mark STAR REGISTRY during an important star registration selling season.[8] (*Id.* ¶ 7.)

Third, SLJ waited until after ISR filed its contempt motion on May 17 to correct a second erroneous sponsored advertisement linked to SLJ. (*Id.* ¶ 8.) ISR's letters should have alerted SLJ that its sponsored advertisement violated the Consent Injunction in not one, but two different ways: first, by using the prohibited heading STAR REGISTRY; and second, by using a link that ostensibly would lead to ISR's website, www.starregistry.com to direct Internet traffic to SLJ's website, www.yourstar.com. (*Id.*) Instead of correcting this violation, SLJ intentionally continued to direct Internet traffic intended for ISR's marks to SLJ from April 26, 2004 until after May 17, 2004, when the problem was corrected. This advertisement suspiciously reappeared, however, with the same heading using the enjoined mark STAR REGISTRY just in time for Father's Day. (R. 16, Supp. Mosele Decl. ¶ 8 & Exs. 21-22.) In addition, another SLJ

---

[7] On April 27, 2004 and May 10, 2004, a search for the terms "star registry" produced the SLJ advertisement in question using the heading "Star Registry Service." On May 11, 2004, the advertisement reappeared with the new heading "Register a Star." (R. 16, Supp. Mosele Decl., Exs. 27-29.)

[8] ISR argues that the timing of the Consent Injunction was designed to ensure SLJ complied with its terms before Mother's Day, one of ISR's busiest star registration selling seasons. (R. 9, Mosele Decl. ¶¶ 6-7.) In the three-week period after the entry of the Consent Injunction and before the holiday, ISR spent $700,000 on a radio advertising campaign designed, at least in part, to bring consumers to the Internet. (*Id.*)

advertisement linked to its website appears on the same page and also uses the prohibited heading STAR REGISTRY. (*Id.*, Ex. 21.) Although SLJ claims that it recently contacted the appropriate advertisers with respect to these violations, SLJ's compliance efforts constitute a classic example of "too little too late." (R. 17, Supp. Amoroso Decl. ¶ 9.) SLJ's attempts to correct these violations two months after receiving notice of the problem indicates at best, a woeful lack of diligence and at worst, an intent to continue to reap the benefits of ISR's marks during an important sales season. We find that ISR has submitted sufficient evidence to support a finding that SLJ should be held in contempt.

## CONCLUSION

For the reasons stated above, we grant ISR's Motion for Order to Show Cause and find SLJ in contempt of court. (R. 8-1.) SLJ is ordered to pay ISR reasonable attorney's fees generated in connection with ISR's motion. ISR should file a motion and accompanying affidavits with the Court quantifying its damages stemming from SLJ's violation of the Consent Injunction.

ENTERED: _____
Judge Ruben Castillo
United States District Court

Dated: July 14, 2004